STATE OF NORTH CAROLINA v. ERNEST GLENN KING

No. 10

(Filed 1 April 1980)

1. **Constitutional Law § 60; Grand Jury § 3.6; Jury § 5.2— jury list—tax list names from certain letters of alphabet—no systematic exclusion**

Names for the list of grand and petit jurors were not chosen arbitrarily or nonsystematically in violation of G.S. 9-2 where every fourth name from the tax list was taken only from the letters A, B, C, D and M rather than from the entire alphabet, although the practice of choosing names only from certain letters of the alphabet is not approved since G.S. 9-2 seems to contemplate systematic selection of names from the entire alphabet.

2. **Homicide § 20.1— photographs of deceased—admissibility for illustrative purposes**

Photographs of a homicide victim's body at the crime scene and in the autopsy room were properly admitted for the purpose of illustrating the testimony of witnesses as to the location, position and condition of the body at the scene and the nature and extent of wounds to the body.

3. **Criminal Law § 42; Homicide § 20— clothing worn by murder victim—admissibility**

Clothing worn by a homicide victim is admissible to identify the body, to establish a fact relevant to the State's theory of the case, or to enable the jury to realize more completely the cogency and force of the testimony of witnesses.

4. **Criminal Law § 102.6— remarks of prosecutor—no gross impropriety**

The remarks of the prosecutor in his argument to the jury in a homicide case concerning the thoughts of the victim as he was stabbed and lay dying and the thoughts of the victim's family were not so grossly improper so as to require the trial judge to take corrective action *ex mero motu.*

**5. Robbery § 4.3— armed robbery—sufficiency of taking**

> The State's evidence was sufficient to show that defendant took personal property from the owner with the intent to steal after stabbing the victim numerous times so as to support defendant's conviction of armed robbery where it tended to show that the victim, a taxi driver, usually wore a money pouch attached to his belt in which to place the fares that he collected; on the day of the crime, he had collected $1.45 in fares; when the driver's body was found, his belt had been cut, permitting the inference that defendant, who was placed at the scene by identification of his palm prints on the taxi, removed the pouch from the driver's possession and control in a forcible manner; and coins were found scattered around the body and the pouch was found several hundred yards from the body, giving rise to the inference that defendant had possession and control of the coins and the money pouch and decided to discard them.

ON appeal by defendant from *Albright, J.* at the 7 May 1979 Criminal Session of CASWELL County Superior Court.

Defendant was charged in indictments, proper in form, with first degree murder and robbery with a dangerous weapon. The State's evidence tended to show that at approximately 1:50 p.m. on 15 July 1978, Robert Johnson travelled down Ware Road, a dead-end dirt road in the community of Providence in Caswell County, in order to eat lunch in the home of a lady who lived near the end of the road. He finished his lunch at 2:40 p.m. and on his way back up Ware Road he saw a yellow taxicab and a body lying nearby. Johnson summoned the Sheriff of Caswell County who lived nearby.

The body was that of Oscar Leonard Keatts. The fare meter in the taxi showed $6.35 indicating the amount due for Keatts' last trip. Keatts maintained a log or manifest in which he entered the times for his trips, their origination, distances, and destination. According to his log, Keatts had made two previous trips that day, each totaling $1.45. One was a cash fare but the other one was charged to the Norfolk and Western Railroad Company for taking employees to work. The cab company does not furnish its employees with money to make change. Mr. Keatts usually wore a money pouch on his belt in which to collect his fares. A pouch similar to the one usually worn by Keatts was found on Walters Mill Road 450 feet north of its intersection with Ware Road. The deceased's belt had been cut and $1.10 in coins were scattered in the vicinity of the body. One nickel was found across the road from the body and two nickels were found in the same

State v. King

area in which the money pouch was found. A total of $1.25 was found.

Jimmy Carter testified that while travelling in his pickup truck on Walters Mill Road on the afternoon of 15 July 1978, he picked up a man he identified as the defendant and gave him a ride to Danville, Virginia. The defendant "was more or less in a trot, . . . was wet with sweat, . . . was dressed in dark pants, tennis shoes, and no shirt." He noticed that defendant's hand was hurt. Defendant told him that "he had been getting up hay and that he had cut his hand getting up hay."

When the defendant was arrested, an S.B.I. agent obtained a pair of tennis shoes from the defendant. Shoe tracks at the scene appeared to have been made by defendant's tennis shoes. Two palm prints on the taxicab were identified as the defendant's prints. Dr. Page Hudson, Chief Medical Examiner of North Carolina, testified that the victim was stabbed on his arms, neck, face, chest, back, and abdomen, a total of seventeen times. In addition, there were many cuts on the victim's hands. The victim's heart, lungs, diaphragm, liver, stomach, and several large blood vessels were all penetrated by the stab wounds. In Dr. Hudson's opinion, approximately six of the wounds were fatal and the deceased died of "multiple incised cuts and stab wounds."

Defendant offered no evidence.

The jury found the defendant guilty of second degree murder and robbery with a dangerous weapon. The trial judge imposed two consecutive life sentences and recommended that defendant serve them "without the benefit of parole, commutation, work release or community leave privileges."

Other facts necessary to the decision of this case will be related in the opinion.

*D. Leon Moore and W. Osmond Smith III for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Henry T. Rosser for the State.*

COPELAND, Justice.

[1] Defendant is black and he contends that the trial judge erred in denying his motion to dismiss the indictments since members

of his race were systematically excluded from the jury list for grand and petit juries in Caswell County. Defendant's argument is that the names for the jury list were not chosen systematically as required by G.S. 9-2 since every fourth name from the tax list was taken only from the letters A, B, C, D and M rather than from the entire alphabet.

G.S. 9-2 provides in relevant part that:

"In preparing the list, the jury commission shall use the tax lists of the county and voter registration records, and, in addition, may use any other source of names deemed by it to be reliable, but it shall exercise reasonable care to avoid duplication of names. The commission may use less than all of the names from any one source if it uses a systematic selection procedure (e.g., every second name), and provided the list contains not less than one and one-quarter times and not more than three times as many names as were drawn for jury duty in all courts in the county during the previous biennium, but in no event shall the list include less than 500 names."

While we do not condone the practice of choosing names only from certain letters of the alphabet because the statute seems to contemplate systematic selection of names from the entire alphabet, we perceive no prejudicial error to the defendant in this case. The procedure was not so arbitrary or nonsystematic as to fail to comply with G.S. 9-2. The purpose of G.S. 9-2 is to insure that jury lists are systematically compiled so as to rule out arbitrary, subjective, discriminatory selection methods which would be violative of defendant's constitutional rights. There has certainly been no constitutional violation since defendant has not shown any significant underrepresentation of his race on the jury list or jury venire from which to infer there was intentional discrimination. *State v. Hough*, 299 N.C. 245, 262 S.E. 2d 268 (1980). As a matter of fact, 19 of the 45 jurors drawn for jury duty were black. The petit jury as chosen was composed of 6 white persons and 6 black persons. This assignment of error is overruled.

[2] Defendant contends that it was error to allow pictures of the deceased at the scene and in the autopsy room to be viewed by the jury. The rule is that even though photographs may be

gory and gruesome, they may nevertheless be used, when properly authenticated, to illustrate a witness' testimony so long as excessive numbers of photographs are not used solely to arouse the passions of the jury and thus deny the defendant a fair trial. *State v. Sledge,* 297 N.C. 227, 254 S.E. 2d 579 (1979). Here, the photographs were relevant and material because they were used to illustrate the testimony of various witnesses as to the location, position and condition of the body at the scene and regarding the nature and extent of the wounds to the body. *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *death sentence vacated,* 403 U.S. 948 (1971). The photographs were not merely repetitious. They portrayed somewhat different scenes and therefore the total number used was not excessive. *State v. Dollar,* 292 N.C. 344, 233 S.E. 2d 521 (1977). The jury was properly instructed to consider the photographs for the sole purpose of illustrating the testimony of the witnesses.

[3] Defendant further contends that it was error to admit the deceased's clothing into evidence because the clothing had no probative value. The rule is that the clothing of a homicide victim is admissible into evidence since it is competent to "identify the body, or to establish a fact relevant to the State's theory of the case or to enable the jury to realize more completely the cogency and force of the testimony of witnesses." *State v. Atkinson, supra* at 310-11, 167 S.E. 2d at 254. This assignment of error is overruled.

[4] Defendant maintains that certain remarks of the district attorney during his closing argument constitute prejudicial error and were so shocking that even if defense counsel had objected, no instructions from the trial judge could have removed the prejudice.

The portion of the argument complained of reads as follows:

"When the defendant's attorneys call on you, call on you to think about the defendant, I ask you to think about Oscar Keatts. Ask you to think about a man fifty or fifty-one years of age, who worked for a number of years at two jobs. A good man. Who is carried out on this isolated dead end road and stabbed seventeen times in and about the body and had his throat cut and bled to death. And as the life flowed from him and flowed from that neck where the defendant had cut and cut and cut and Dr. Hudson said one cut went around to the back of the neck, and what did he think of as he lay there dying

and the blood rolling out of his neck on the dirt road, did he think about his mother that he lived with and cared for? Did he think will the roses bloom in Heaven, are there any gardens there? Will the branches bloom with blossoms and in winters fill with snow? Will the roses bloom in Heaven, tell me mother ere I go. Did he think of his brothers and sisters when he knew that his life was sputtering from his neck that he would never see again. Did he think of them? What does a person who knows that he is dying a horrible death think of? And what of his family?

Ladies and gentlemen of the jury, this man died. There had been a death here. A horrible death, and there was a funeral and his family has been brave and tried to be brave but what went through their minds as they went to the cemetery?

Undertaker, undertaker, please drive slow for the body that you are hauling, Lord, I hate to see it go."

G.S. 15A-1230(a) provides that:

"During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue."

Our cases provide that argument of counsel must be left largely to the control and discretion of the trial judge and counsel must be allowed wide latitude in the argument of hotly contested cases. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975); *State v. Seipel*, 252 N.C. 335, 113 S.E. 2d 432 (1960); *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424 (1955). Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom. *State v. Monk, supra; State v. Conner*, 244 N.C. 109, 92 S.E. 2d 668 (1956).

On the other hand, we have held that counsel may not place before the jury incompetent and prejudicial matters and may not

"travel outside the record" by injecting into his argument facts of his own knowledge or other facts not included in the evidence. *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated*, 408 U.S. 939 (1972). Upon objection, the trial judge has a duty to censor remarks not warranted by either the evidence or the law, or remarks calculated to mislead or prejudice the jury. *State v. Monk, supra* and cases cited therein. Ordinarily, the objection to such improper remarks must be made before verdict to give the trial judge the opportunity to take appropriate action, or else the objection is deemed waived and cannot be raised on appeal except in a death case where the remark was so prejudicial that no instruction from the trial judge could have removed its prejudicial effect from the jurors' minds. *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death sentence vacated*, 429 U.S. 809 (1976); *State v. Locklear*, 291 N.C. 598, 231 S.E. 2d 256 (1977); *State v. Coffey*, 289 N.C. 431, 222 S.E. 2d 217 (1976). However, if the impropriety is gross the trial judge should, even in the absence of objection, correct the abuse *ex mero motu*. *State v. Monk, supra; State v. Smith*, 240 N.C. 631, 83 S.E. 2d 656 (1954).

We do not find that the jury argument in this case required any action from the trial judge to correct any gross improprieties *ex mero motu*. Defense counsel did not find the remarks so shocking when he heard them at trial to lead him to make an objection. We perceive no error in the argument prejudicial to the defendant.

> "It is the duty of the prosecuting attorney to present the State's case with earnestness and vigor and to use every legitimate means to bring about a just conviction. In the discharge of that duty he should not be so restricted as to discourage a vigorous presentation of the State's case to the jury." *State v. Monk, supra* at 515, 212 S.E. 2d at 130; *State v. Westbrook, supra.*

This assignment of error is overruled.

[5] Defendant contends that his motion to dismiss the armed robbery charge was improperly denied since there is no evidence that defendant took anything of value from the deceased. Defendant concedes in his brief that he was armed, but argues that

there was no showing that he took the property of another since $1.25 of the $1.45 known to have been in the deceased's possession, was recovered.

Robbery is the taking, with intent to steal, of personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation. *State v. Bailey,* 278 N.C. 80, 178 S.E. 2d 809 (1971), *cert. denied,* 409 U.S. 948 (1972); *State v. McWilliams,* 277 N.C. 680, 178 S.E. 2d 476 (1971); *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194 (1966). On a motion to dismiss charges due to insufficiency of the evidence, all of the evidence is to be considered in the light most favorable to the State and the State is to be given the benefit of every reasonable inference to be drawn therefrom. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971); *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971).

In *State v. Carswell,* 296 N.C. 101, 249 S.E. 2d 427 (1978), we held that removal of an air conditioner from its base in the window to a point on the floor four to six inches toward the door was a sufficient taking and asportation of the personal property of another to support a larceny conviction. In *State v. Walker,* 6 N.C. App. 740, 171 S.E. 2d 91 (1969), it was held that a sufficient taking was accomplished when the defendant took rings from the jewelry store counter and placed them in his pockets although he threw them on the floor as he fled from the store. There it was stated that,

"[t]he fact that the property may have been in defendant's possession and under his control for only an instant is immaterial if his removal of the rings from their original status was such as would constitute a complete severance from the possession of the owner." *Id.* at 743, 171 S.E. 2d at 93.

*See also, State v. Green,* 81 N.C. 560 (1879) (removal of a drawer containing money from a safe is a sufficient taking although the money was never removed from the drawer and the drawer was never removed from the room containing the safe). In other words, it is not necessary that a defendant be successful in permanently depriving the rightful owner of his possession. It is sufficient if there is a taking with the intent to permanently deprive the owner of his possession at the time of the taking.

Here, the circumstantial evidence for the State permits the reasonable inferences of a sufficient severance of possession from the owner and reduction to possession by the defendant in a most violent manner with the intent to steal, so as to support a conviction for armed robbery. The evidence tended to show that the deceased usually wore a money pouch attached to his belt in which to place the fares that he collected. On 15 July 1978, he had collected $1.45 in fares. When his body was found his belt had been cut permitting the inference that defendant, who was placed at the scene by identification of his palm prints on the taxi, removed the money pouch from Keatts' possession and control in a forcible manner. Coins were found scattered around the body and the money pouch was found along Walters Mill Road several hundred yards from the body. These facts give rise to the inference that the defendant had possession and control of the coins and the money pouch and decided to discard them. Although all but twenty cents of the money was ultimately recovered, indicating that the defendant did not keep any of the money, the crime of armed robbery was complete as the defendant stood over the man he had mercilessly stabbed so many times and made the decision as to whether to keep the small sum of money that he had taken from his victim or discard it before fleeing. This assignment of error is overruled.

This was indeed a cruel and utterly senseless crime. The convictions and sentences shall stand because in the trial we find

No error.