STATE OF NORTH CAROLINA v. MICHAEL S. BATES

No. 647A82

(Filed 3 November 1983)

**1. Robbery § 4.7— armed robbery—insufficient evidence**

Defendant's motion to dismiss the charge of robbery with a dangerous weapon should have been granted at the close of the evidence where the evidence tended to show that a brutal fight took place between defendant and decedent; blood of both defendant and the deceased was found on the items of

personal property, on the hood of an automobile, and on the ground; a crime scene technician testified that there were numerous scuff marks in the dirt surrounding the automobile and in other areas in the clearing of a field where the fight took place; personal property belonging to *defendant* was also scattered throughout the field as well as personal property belonging to decedent; defendant testified that he never saw decedent's possessions nor was he aware of how they came to be strewn around the area; and where, when defendant's explanatory testimony is considered along with the physical evidence presented by the State, the logical inference is that decedent lost items of personal property during the struggle with defendant, and there was simply no substantial evidence of a taking by defendant with the intent to permanently deprive decedent of the property.

2. **Homicide § 4— insufficient evidence to support commission of underlying felony — insufficient evidence to support felony murder**

   Where defendant was found not guilty of premeditated and deliberated murder, and where he was convicted of felony murder, premised upon the commission of armed robbery, but where there was insufficient evidence to support the commission of the underlying felony, there was also insufficient evidence to support defendant's conviction of felony murder.

3. **Homicide § 18— evidence designed to show premeditation and deliberation — improperly admitted**

   There was no open and visible connection between defendant's statements to a witness several months prior to decedent's death and the fact to be proved in the case which was that the murder of decedent was committed by defendant with premeditation and deliberation where the witness testified that he and defendant were discussing methods of fighting in the Army when defendant told the witness that if he were going to kill someone he would be inclined to use a handgun.

4. **Homicide § 23— failure to instruct on effect of circumstantial evidence — no error**

   The trial court properly failed to instruct as to the effect of circumstantial evidence since there was both direct and circumstantial evidence of defendant's perpetration of the crime charged in that defendant admitted fighting with decedent at the crime scene and admitted stabbing him several times with a knife.

APPEAL by defendant from *Britt, Judge,* at the 26 July 1982 Criminal Session of CUMBERLAND County Superior Court.

Defendant was charged in indictments, proper in form, with first-degree murder and robbery with a firearm. He entered pleas of not guilty to each of the offenses charged.

The State offered evidence tending to show that at around 11:00 p.m. on 6 January 1982, defendant came to the residence of Mrs. Mary Godwin at 307 Kenleigh Road in Fayetteville, North

Carolina. Mrs. Godwin testified that defendant appeared to be severely injured and was pleading for help. She stated that defendant's clothing was covered with blood and dirt. A nurse at Cape Fear Valley Hospital, Mrs. Godwin attempted to render first aid assistance to defendant Bates and immediately called an ambulance and the Cumberland County Sheriff's Department.

Deputy John Dean responded to Mrs. Godwin's call. Deputy Everette Scearce arrived shortly thereafter and began to search the area around the Godwin residence. In a field approximately 300 feet from the house, Scearce discovered the body of Roy Lee Warren, Jr., lying beside an automobile. Warren's body was partially covering what appeared to be a lead pipe approximately 18 inches in length. Scearce testified that he remained in the field only a few moments before leaving to call an ambulance for Warren.

Conrad Rensch, a crime scene technician with the City/County Bureau of Investigation, testified that he received a call to come to Kenleigh Road at approximately 12:30 a.m. on 7 January. He immediately proceeded to the field and began his investigation of the crime scene. He observed that there were numerous scuff marks in the dirt surrounding the body and he detected spots of blood on the car.

Items of personal property belonging to both Bates and Warren were discovered in an area near the edge of the field. These items ranged in distance from approximately 73 feet to 116 feet from Warren's body and were generally located within 25 feet of each other. A watch, keys, wallet, checkbook and calculator were identified as the victim's possessions, while a gauze bandage, gold neck chain and jacket were determined to belong to defendant. Rensch noted that there were scuff marks near several of the items and that the ground was covered with blood in some places.

Rensch also testified that he found a .22 caliber revolver in a grassy area not far from the other items. Douglas Branch, a ballistics expert with the State Bureau of Investigation, stated that in his opinion a bullet recovered from the decedent's body was fired from the revolver discovered in the field. Rensch related that there was a large amount of blood near the gun. He did not see scuff marks in that area, but admitted that it was usually difficult to find them in the grass.

David Hedgecock is a forensic serologist employed by the S.B.I. Crime Laboratory. He testified that after performing laboratory tests upon blood samples removed from Bates and Warren, he determined that defendant's ABO grouping was type B and the deceased's ABO grouping was type O. Hedgecock stated that the blood removed from the car was type B and therefore consistent with defendant's blood type, but that the bloodstains found on the ground and on the various personal items strewn throughout the field were of both type O and B.

The State also presented testimony of Dr. Thomas Bennett, a forensic pathologist. He testified that during the post-mortem examination of the deceased, he located numerous small cuts and abrasions and 32 stab wounds. He further identified two gunshot wounds, one to Warren's right abdomen and another, a grazing wound to the left cheek. Dr. Bennett recovered one bullet from the body in the midline section.

Dr. Bennett testified that in his opinion the gunshot wounds were inflicted at close range, at least within four feet. He further gave his opinion that the gunshot wounds were probably inflicted before the stab wounds.

Defendant's evidence, which included his own testimony, tended to show that he and Warren were friends and former co-workers at the Food Town grocery. Defendant Bates testified that a few days prior to 6 January 1982, Warren asked him if he had a gun. Defendant replied that he did not have one, but that his mother did. Defendant asked Warren to meet him in the field on Kenleigh Road and there gave Warren his mother's .22 caliber revolver. Defendant acknowledged that Warren gave him $30.00 for the weapon, although he maintained that he did not ask for any money in exchange for the gun.

Defendant further testified that, on 6 January, he went to the Food Town where Warren worked and asked him to return the pistol because his mother had discovered that it was missing. Warren offered to bring the gun to defendant's home later that evening, but defendant told Warren he would rather meet at the same field on Kenleigh Road so his mother would not see them. Warren agreed and told defendant to watch for him around 7:00 p.m. Defendant stated that he lived near the field and watched for Warren's car from his bedroom window. Warren arrived at the

field at around 10:00 p.m. and defendant then walked out to meet him.

Defendant testified that he and the decedent had a disagreement over the gun because Warren refused to return it until defendant gave him $30.00. After Warren consistently refused to relinquish the weapon without payment, defendant said he would have to tell his mother where the gun was. As he rose and turned to get out of the car, defendant testified that Warren stabbed him in the back. Defendant remembered that he stumbled, but after regaining his balance he began to run in the direction of the nearest house. Because defendant had a cast on his leg from a football injury, he did not run to his own home because it was farther away and he was afraid he would not make it.

Defendant testified that Warren fired one or two gunshots and shouted something like, "If you don't stop running, I'll kill you." Defendant stated that he stopped running and Warren caught up with him in the general area where most of the items of personal property were later found. Defendant stated, however, that he did not recall seeing any of the decedent's possessions.

Defendant testified that Warren approached him and hit him across the forehead with the gun. Defendant fell to the ground, Warren jumped on him and they started to fight. Defendant related that at one point during the tussle, he tried to wrestle the gun from the decedent. He testified that the gun went off while he and Warren were fighting on the ground, although he was unaware that a bullet had struck the decedent.

Eventually, defendant was able to break free from Warren and he crawled back toward the car. Defendant testified that he was about to enter the car when Warren grabbed him from behind and pulled him to the ground. Defendant stated that when he opened the door to get into the car, a metal pipe rolled out from the floorboard and onto the ground.

Defendant remembered tussling with Warren beside the car and receiving a second stab wound to the chest. He testified that he pulled the knife from his chest and began to stab the decedent. At some point, Warren fell off of defendant and, shortly thereafter, defendant lost consciousness. He later wakened and made his way to the Godwin residence on Kenleigh Road.

The jury convicted defendant of felony murder and robbery with a firearm. Defendant was, however, specifically found not guilty of premeditated and deliberated murder. Defendant was sentenced to life imprisonment for the first-degree murder of Roy Lee Warren, Jr. Since the felony murder conviction was premised upon the commission of the armed robbery, the robbery conviction merged with the felony murder conviction and no sentence was imposed on the robbery charge.

Defendant appealed the life sentence directly to this Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by W. Dale Talbert, Assistant Attorney General, and David Roy Blackwell, Assistant Attorney General, for the State.*

*John G. Britt, Jr., Assistant Public Defender, and Richard B. Glazier, Assistant Public Defender, for defendant appellant.*

BRANCH, Chief Justice.

[1] Defendant first contends the trial court erred in denying his motion to dismiss the armed robbery charge for insufficiency of the evidence.

On a motion to dismiss on the ground of insufficiency of the evidence, the question for the court is whether there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime. *State v. Riddle,* 300 N.C. 744, 268 S.E. 2d 80 (1980). "The substantial evidence test requires that the evidence must be existing and real, not just seeming and imaginary." *State v. Irwin,* 304 N.C. 93, 97-98, 282 S.E. 2d 439, 443 (1981).

In evaluating the motion, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *State v. Thomas,* 296 N.C. 236, 250 S.E. 2d 204 (1978). When so considered, if the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss should be allowed. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

To withstand defendant's motion to dismiss in instant case, the State was required to show substantial evidence of each of

the essential elements of the crime of robbery with a dangerous weapon. Under G.S. 14-87, an armed robbery is defined as the nonconsensual taking of the personal property of another in his presence or from his person by endangering or threatening his life with a firearm or other deadly weapon, with the taker knowing that he is not entitled to the property and intending to permanently deprive the owner thereof. *State v. Davis*, 301 N.C. 394, 271 S.E. 2d 263 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

Specifically, defendant argues that the State has not shown by substantial evidence a taking of the victim's property with the intent to permanently deprive him of its use.

The State relies on the fact that the deceased's property was found some distance from his body to establish a taking by defendant. In support of this position, the State analogizes the facts of this case to those presented in *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980). In *King*, the State's evidence revealed that the victim, a taxi driver, usually wore a money pouch attached to his belt in which he placed the fares that he collected. On the day of the crime, the driver had collected $1.45 in fares. When his body was discovered, his belt had been cut and coins were found scattered around the body. The money pouch was located several hundred yards away.

The defendant argued that these facts were not sufficient to establish that he took anything of value from the deceased. This Court disagreed, holding that the defendant's motion to dismiss was properly denied. The Court found that these facts supported an inference that the defendant had possession and control of the money pouch and the coins and decided to discard them.

*King* is factually distinguishable from the instant case. In *King*, there was evidence that the victim's belt had been *cut*, thereby supporting an inference that the money pouch was forcibly taken. Here, there is no such clear physical evidence of a taking.

Furthermore, in *King* there was no evidence that the victim had ever been in the area where the pouch was found. Conversely, in this case the evidence clearly establishes that defendant and the deceased struggled violently in the grassy area where most of Warren's personal property was discovered.

Finally, defendant's uncontroverted testimony refutes a conclusion that he forcibly took these items of personal property from the victim with the intent to steal them.

We have consistently held that on a motion to dismiss, the court must consider the defendant's evidence which explains or clarifies that offered by the State. *State v. Blizzard,* 280 N.C. 11, 184 S.E. 2d 851 (1971); *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169 (1965). The court must also consider the defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the State's evidence. *State v. Bruton, supra.*

Defendant Bates' testimony in its entirety must be characterized as a clarification of the State's testimonial and physical evidence; it in no way contradicted the prosecution's case.

Defendant's testimony and the physical evidence reveal that a brutal fight took place between Bates and Warren. Blood of both defendant and the deceased was found on the items of personal property, on the hood of the automobile and on the ground. Conrad Rensch testified that there were numerous scuff marks in the dirt surrounding the automobile and in other areas in the clearing. It is also important to note that items of personal property belonging to *defendant* were also scattered throughout the field. Defendant testified that he never saw decedent's possessions nor was he aware of how they came to be strewn around the area.

When defendant's explanatory testimony is considered along with the physical evidence presented by the State, the logical inference is that the decedent lost these items of personal property during the struggle with defendant. There is simply no substantial evidence of a taking by defendant with the intent to permanently deprive Warren of the property. We therefore hold that defendant's motion to dismiss the charge of robbery with a dangerous weapon should have been granted.

[2] We further note that defendant was found not guilty of premeditated and deliberated murder. He was convicted of felony murder, premised upon the commission of armed robbery. Because there was insufficient evidence to support the commission of the underlying felony, there is also insufficient evidence to support defendant's conviction of felony murder.

Because the possibility of retrial exists as to lesser charges, we address the following issues raised by defendant.

[3]   Defendant contends the trial court erred in admitting into evidence, over defendant's objection, testimony of Manuel Alvarez regarding a conversation he had with defendant several months prior to the date of the offense charged.

On rebuttal for the State, the witness Alvarez testified that he spoke with defendant in the fall of 1981 about methods of killing. Alvarez recalled telling defendant that if he were going to kill someone, he would use hand-to-hand combat. Defendant responded that he would be more inclined to use a handgun. Alvarez testified that he concluded the brief conversation by telling defendant that if he were to use a firearm, he would take the person to a secluded area to commit the killing. In response to questioning by defense counsel, Alvarez stated that this dialogue arose out of a conversation relating to fighting in the United States Army.

Defendant objects to the admission of this evidence on the ground that it has no logical or theoretical connection to the case at bar. The State, however, contends that defendant's statements to Alvarez were admissible to show premeditation and deliberation.

This Court has stated on numerous occasions that evidence is relevant and therefore admissible if it has any logical tendency to prove a fact in issue. *E.g., State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973); *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968). The following passage from *State v. Covington,* 290 N.C. 313, 335, 226 S.E. 2d 629, 645 (1976), quoting 1 Stansbury's North Carolina Evidence § 78, at 237 (Brandis rev. ed. 1973), is instructive:

> The standard of admissibility based on relevancy and materiality is of necessity so elastic, and the variety of possible fact situations so nearly infinite, that an exact rule cannot be formulated. In attempting to express the standard more precisely, the Court has emphasized the necessity of a *reasonable,* or *open and visible* connection, rather than one which is remote, latent, or conjectural, between the evidence presented and the fact to be proved by it, at the same time

pointing out that the inference to be drawn need not be a *necessary* one.

(Emphasis in original.)

We perceive no *open and visible* connection between defendant's statements to Alvarez several months prior to Warren's death and the fact to be proved in instant case, that is, that the murder of Warren was committed by defendant with premeditation and deliberation. The remoteness of the connection between the conversation and the killing is not merely temporal. The State presented absolutely no evidence tending to logically connect this conversation with the death of Roy Lee Warren, Jr. The conversation did not include the name of the deceased, or of any individual. In fact, Alvarez testified that he and defendant were discussing methods of fighting in the army when this specific discussion arose. There is simply a dearth of evidence tending to show that in the fall of 1981, Michael Bates was planning the murder of Roy Lee Warren, Jr.

Since the State failed to provide any logically direct or circumstantial basis to connect this conversation with the crime charged, we must agree with defendant that the trial court erred in admitting this testimony.

Although we find error in the admission of the evidence, we conclude that the error was not prejudicial to defendant. Alvarez' testimony clearly related to the issue of premeditation and deliberation. The jury rejected this theory, however, finding defendant not guilty of first-degree murder on the basis of premeditation and deliberation. Defendant was convicted of felony murder and the testimony complained of does not relate to the elements of that offense. We therefore perceive no prejudice to defendant from the erroneous admission of this testimony.

[4] Finally, defendant contends the trial court erred in denying his special request for a jury instruction as to the effect of circumstantial evidence when no direct evidence is presented.

The instruction requested by defendant should be given only when there is no direct evidence. If either the State or the defendant elicits direct evidence bearing on any issue for the jury's determination, then such an instruction is not appropriate.

Defendant's contention that the trial judge erroneously failed to give the requested instruction must be rejected for the reason that there was both direct and circumstantial evidence of defendant's perpetration of the crime charged. Defendant admitted fighting with Warren at the crime scene and admitted stabbing him several times with a knife. This was direct evidence supporting the trial court's instructions on first-degree murder, second-degree murder and voluntary manslaughter.

Admittedly, the vast majority of the evidence against defendant was circumstantial. Nevertheless, some direct evidence bearing on the issues submitted to the jury was presented and the trial judge therefore properly instructed on the concept of circumstantial evidence when direct evidence is also presented. This assignment is overruled.

For the reasons above stated, the judgment entered upon defendant's convictions of felony murder and robbery with a dangerous weapon is

Reversed.