**STATE v. WHEELER**

[122 N.C. App. 653 (1996)]

STATE OF NORTH CAROLINA v. WILLIAM ROGERS WHEELER

No. COA95-773

(Filed 18 June 1996)

1. **Robbery § 84 (NCI4th)— attempted robbery with dangerous weapon—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury in a prosecution for attempted robbery with a dangerous weapon where it tended to show that the victim was a guest in defendant's house; defendant knew that the victim had $700 in his pocket; defendant testified that he entered the bedroom where the victim was sleeping, told him to get up, and shot into the mattress when the victim did not get up; defendant told the victim to empty his pockets; and defendant then shot the victim.

**Am Jur 2d, Robbery § 89.**

2. **Criminal Law § 1102 (NCI4th)— assault and attempted robbery—maintaining dwelling house where illegal drug use occurred—finding of nonstatutory aggravating factor— error**

In a prosecution of defendant for assault with a deadly weapon with intent to kill inflicting serious injury and attempted robbery with a dangerous weapon, the trial court erred in finding as a nonstatutory aggravating factor that defendant maintained a dwelling where illegal drug use was occurring on the grounds that it created an atmosphere that led up to the commission of the crimes, since the fact that illegal drug use had occurred in defendant's residence prior to his commission of the assault and attempted robbery did not make him more culpable for those offenses.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal by defendant from judgment entered 27 October 1994 by Judge Beverly T. Beal in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 March 1996.

The State presented evidence which tended to show that at approximately 1:00 a.m. on 2 February 1994, Benjamin Franklin Thompson went to the defendant's residence in Mecklenburg County. Thompson had known the defendant for about ten years, and believed

that he and the defendant were friends. Thompson went to defendant's apartment because there was "usually some partying going on over there" and "you can meet some females." Thompson also testified that, before going to defendant's, Thompson had been drinking gin and was "high" when he got there. When Thompson arrived, the defendant and his girlfriend Shalette, and four other people were already there. Thompson entered through the back door and spoke with the defendant. Then Thompson went to the front room where everyone was, and began to smoke some crack cocaine which he had brought with him. Thereafter, Thompson played cards, drank beer and continued to smoke crack cocaine. Thompson sold some of the cocaine to the man with whom he played cards and he gave some to the defendant. Thompson also testified that everyone at the party knew that he had just received his tax refund of $700.00 and that he had it with him in the pocket of his jacket. Thompson said that he told everyone at the party that he had this money because, "[he] was among friends and it just—it's, you know, look what I got; it's my tax day, my tax came." During the evening Thompson asked the defendant if the defendant thought that Thompson was seeing the defendant's girlfriend. The defendant said that he did not. People began to leave the defendant's home at approximately 5:00 a.m. Thompson planned to leave but defendant told him that he could stay, so Thompson lay down on the bed in a back bedroom and went to sleep. Thereafter the defendant woke Thompson by saying, "get up and put your hands up." Then the defendant asked Thompson to empty his pockets onto the floor. It was dark but Thompson could see by the light from the hallway that the defendant had a shiny pistol in his hand. Thompson put his hands up and emptied the contents of his pockets, which included some cocaine and his $700.00 tax refund, onto the floor. After emptying his pockets the defendant shot Thompson in the left side of his chest. Thompson then "charged" the defendant and the two men struggled for the gun. The defendant shot Thompson again and the bullet hit Thompson in the middle of the chest. Thompson hit the defendant in the head and took possession of the gun. Thompson tried to shoot the defendant but the gun would not fire. Thompson ran out of the house to a neighbor's house to call for help.

The defense put on evidence which tended to show that the defendant felt threatened by Thompson's presence at the party. The defendant testified that he had not invited Thompson to his house and that Thompson made him feel uneasy because, "he was always

approaching me at my house and, you know, and I would tell him to sit down and then he would always get in my face." As people started to leave the party the defendant told Thompson that he could spend the night at defendant's home. When the defendant unsuccessfully tried to wake Thompson up, the defendant shot a .32 caliber pistol into the mattress and advised Thompson to get out of bed. Defendant then told Thompson to empty his pockets. Thompson emptied his pockets on to the floor and began to walk towards the defendant. Defendant then shot Thompson. Defendant made a statement to the police in which he admitted that he had been told that Thompson and Shalette were having an affair. Additionally, the defendant said that he asked Thompson to empty his pockets because he was going to take Thompson's money and drugs and throw them out the front door and then Thompson would have to leave the house to retrieve his belongings.

Defendant was found guilty of assault with a deadly weapon with intent to kill inflicting serious injury and attempted robbery with a dangerous weapon. He was sentenced to 16 years and 14 years respectively.

*Attorney General Michael F. Easley, by Assistant Attorney General Richard G. Sowerby, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant appellant.*

ARNOLD, Chief Judge.

[1] Defendant first assigns error to the trial court's denial of the defendant's motion to dismiss the charge of attempted armed robbery where the evidence was insufficient for a rational trier of fact to find every element of that crime beyond a reasonable doubt. We disagree.

In ruling upon defendant's motion to dismiss on the grounds of insufficient evidence, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Fletcher*, 301 N.C. 709, 272 S.E.2d 859 (1981). "When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). "Whether evidence presented constitutes substantial evidence is a question of law for the court." *Id.*

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* "[T]he trial court should only be concerned that evidence is sufficient to get the case to the jury; it should not be concerned with the weight of the evidence." *Id.* at 237, 400 S.E.2d at 61. "It is *not* the rule in this jurisdiction that the trial court is required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss." *Id.* "[C]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *Id.*

N.C. Gen. Stat. § 14-87(a) (1993) defines attempted armed robbery with a dangerous weapon.

Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

Thus, "[a]n attempted robbery with a dangerous weapon occurs when a person, with the specific intent to unlawfully deprive another of personal property by endangering or threatening his life with a dangerous weapon, does some overt act calculated to bring about this result." *State v. Allison,* 319 N.C. 92, 96, 352 S.E.2d 420, 423 (1987). Felonious intent is an essential element of the offense of armed robbery and of the attempt to commit armed robbery. *State v. Spratt,* 265 N.C. 524, 526, 144 S.E.2d 569, 571 (1965). Felonious intent means the intent to permanently deprive the owner of his property. *State v. Smith,* 268 N.C. 167, 170, 150 S.E.2d 194, 198 (1966).

In *State v. Davis,* 340 N.C. 1, 455 S.E.2d 627 (1995), the defendants, Davis and Hood, murdered the owner of a pawn shop. The defendants and the owner of the pawn shop engaged in a brief discussion regarding the sale of a shotgun. *Id.* at 9, 455 S.E.2d at 630. Defendants then drew their pistols, and Davis stated to the victim, Mark Lane, "Buddy, don't even try it. Buddy, don't even try it." *Id.* at 9, 455 S.E.2d 630-631. Davis then immediately shot Lane twice. *Id.* Lane returned fire once after falling to the floor. *Id.* Hood then shot Lane. *Id.* Both defendants fled the scene and no money or property was taken from the pawn shop. *Id.* The court found the defendants'

actions to be sufficient evidence to support the charges of attempted armed robbery, even though there was no demand for money or property. *Id.* at 13, 455 S.E.2d at 633.

Also, in *State v. Smith*, 300 N.C. 71, 77, 265 S.E.2d 164, 169 (1980), the defendant pulled a gun on a store owner and said, "Don't move. . . . Don't put your hands under that counter." The defendant made no demand for money and the court upheld the attempted robbery conviction. *Id.* at 81, 265 S.E.2d at 171.

In the present case, defendant argues that *State v. Bates*, 309 N.C. 528, 308 S.E.2d 258 (1983) is controlling. In *Bates*, the defendant and the victim engaged in a struggle in an open field and as a result of the struggle the victim's personal belongings were scattered throughout the field. *Id.* The court held in *Bates* that the defendant's testimony, "in its entirety had to be characterized as a clarification of the State's testimonial and physical evidence, because it in no way contradicted the prosecution's case." *Id.* at 535, 308 S.E.2d at 263. Consequently, the court found that there was no substantial evidence of a taking by the defendant with the intent to permanently deprive the victim of his property. The North Carolina Supreme Court reversed the ruling of the trial court and held that the defendant's motion to dismiss the charge of robbery with a dangerous weapon should have been granted. *Id.* at 535, 308 S.E.2d at 264.

The present case is distinguishable from the facts in *Bates*. The defendant was aware that Thompson had just received his tax refund and that Thompson was carrying the $700.00 refund in his pocket. Additionally, the defendant testified that he entered the bedroom with a gun where Thompson was sleeping and told him "to get up," and when Thompson did not do so the defendant shot into the mattress. Then the defendant told Thompson to empty his pockets. We find the present case to be more closely aligned with the facts of *Davis*, 340 N.C. 1, 455 S.E.2d 627, and *Smith*, 300 N.C. 71, 265 S.E.2d 164. The State's evidence showed that the defendant possessed a gun and that he threatened Thompson with its use, and he also shot Thompson with the gun after demanding that Thompson empty his pockets. When considering the evidence in the light most favorable to the State, the State offered substantial evidence of the defendant's guilt on every element of attempted robbery with a dangerous weapon.

[2] The defendant's second assignment of error is that the trial court erred in finding as a nonstatutory aggravating factor that the defendant maintained a dwelling where illegal drug use was occurring, on

the grounds that this aggravating factor was not reasonably related to the purposes of sentencing. We agree and remand for a new sentencing hearing.

N.C. Gen. Stat. § 15A-1340.3 (1988) sets forth the purposes of sentencing a person convicted of a crime.

> The primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

"This section does not require that only aggravating or mitigating factors listed in the section be considered. The court may use any factors which are supported by the preponderance of the evidence and are reasonably related to the purposes of sentencing." *State v. Setzer*, 61 N.C. App. 500, 504-505, 301 S.E.2d 107, 110 (1983).

> An aggravating factor is intended to aid the trial court in imposing a punishment commensurate with defendant's culpability. . . . [T]he Supreme Court stated a guideline for determining when a factor is properly used to aggravate a sentence. The Court said a factor should not be considered in aggravation of a sentence unless it makes defendant more blameworthy than he already is as a result of committing a violent crime against another person.

*State v. Underwood*, 84 N.C. App. 408, 413, 352 S.E.2d 898, 901 (1987), (citing *State v. Hines*, 314 N.C. 522, 335 S.E.2d 6 (1985)), *rev'd on other grounds, State v Thompson*, 328 N.C. 477, 402 S.E.2d 386 (1991). In *State v. Wall*, 96 N.C. App. 45, 384 S.E.2d 581 (1989), the defendant was convicted of possession with intent to sell and deliver cocaine, sale of cocaine and delivery of cocaine. The trial court found the following to be a nonstatutory aggravating factor:

> the defendant operated the Midnight Express where beer is sold and dance hall is maintained under conditions rendering his possession of controlled substances for purpose of sale, particularly aggravating because of large public dependence and exposure to opportunity for abuse of controlled substances.

*Id.* at 51, 384 S.E.2d at 584. "Evidence which increases a defendant's culpability may properly be considered as an aggravating factor."

*State v. McKinney*, 88 N.C. App. 659, 665, 364 S.E.2d 743, 747 (1988), (citing *State v. Perry*, 316 N.C. 87, 110-11, 340 S.E.2d 450, 464-465 (1986)). This Court found that the trial court erred in making this finding, because increased access to potential customers did not increase the defendant's culpability for his drug convictions and remanded for a new sentencing hearing. *Wall* at 52, 394 S.E.2d at 585.

Similarly, in the instant case the trial court's finding as an aggravating nonstatutory factor, that the defendant maintained a dwelling where illegal drug use was occurring on the grounds that it created an atmosphere that led up to the commission of the crimes, was improper. The fact that illegal drug use had occurred in the defendant's residence prior to his commission of assault with a deadly weapon and attempted robbery with a dangerous weapon did not make him more culpable for these offenses. The defendant testified that he had not invited Thompson to his house and that Thompson is the one who brought crack cocaine with him and sold it to other people at the party in defendant's home. Because the trial court erred in making this finding, we remand for a new sentencing hearing.

In the trial court's denial of defendant's motion to dismiss the charge of attempted armed robbery we find no error.

Remand for resentencing.

Judges MARTIN, John C. and SMITH concur.