WILLIAM N. DIXON, ADMINISTRATOR OF THE ESTATE OF WILLIE L. DIXON v. RUSSELL C. TAYLOR, M.D., AND WATAUGA HOSPITAL, INC., D/B/A WATAUGA COUNTY HOSPITAL

No. 9224SC760

(Filed 20 July 1993)

1. **Appeal and Error § 340 (NCI4th) — medical negligence — appeal limited to issues raised in assignments of error**

It was assumed on appeal that there was sufficient evidence presented at trial to establish a duty and a breach of that

DIXON v. TAYLOR

[111 N.C. App. 97 (1993)]

duty by defendant hospital where the hospital assigned error only to the sufficiency of evidence as to proximate causation.

**Am Jur 2d, Appeal and Error §§ 648 et seq.**

2. **Physicians, Surgeons, and Other Health Care Professionals § 118 (NCI4th) — medical malpractice — multiple negligence claims — proximate cause contested — submission of all claims**

The trial court correctly denied a hospital's motions for directed verdict and judgment notwithstanding the verdict in a medical malpractice action if there was substantial evidence in the record that any one of the four claims of negligence asserted by plaintiff was a proximate cause of plaintiff's injuries where the hospital did not attempt to distinguish between the different claims of negligence asserted by plaintiff and relied on the general claim that plaintiff's evidence was deficient as to proximate cause. Plaintiff is required to offer evidence of the essential elements of negligence on each claim in order to support submission of the issue of negligence to the jury on each claim. The trial court is required to withdraw a claim from the jury upon proper motion by defendant, which must allege with particularity the deficiencies that exist with respect to each separate claim of negligence. A failure to so allege justifies submission to the jury of the multiple claims of negligence if there is substantial evidence in the record, considered in the light most favorable to plaintiff, of the essential elements of negligence on any one of the multiple claims.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 357 et seq.**

3. **Hospitals and Medical Facilities or Institutions § 66 (NCI4th) — negligence — failure to restock Code cart — proximate cause of injuries**

The trial court correctly denied a hospital's motions for a directed verdict and judgment notwithstanding the verdict where one of the negligence claims asserted by plaintiff was that the hospital failed to stock the Code cart with the appropriate laryngoscope blade and that this failure was a proximate cause of the victim's injuries, and, viewed in the light most favorable to plaintiff, the evidence establishes that the hospital's breach of duty in not having the Code cart properly restocked resulted in a three-minute delay in the intubation

## DIXON v. TAYLOR

[111 N.C. App. 97 (1993)]

of the victim which was the proximate cause of the victim's brain death.

**Am Jur 2d, Hospitals and Asylums §§ 31, 32.**

4. **Physicians, Surgeons, and Other Health Care Professionals § 149 (NCI4th)— respiratory therapist—standard of care—instructions**

The trial court did not err in a medical malpractice action in its instructions regarding the standard of care for a respiratory therapist where the instruction did not, as defendant hospital suggested, permit the jury to hold the respiratory therapist to a higher standard of care than a general practitioner in respiratory therapy.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 363 et seq.**

5. **Trial § 13 (NCI4th)— medical malpractice—request to take exhibit into jury room—previous objection out of jury's presence—agreement in jury's presence**

The trial court did not err by permitting an exhibit to be taken into the jury room during a medical malpractice trial where one defendant's attorney had stated in the absence of the jury that he objected to any exhibits being taken into the jury room, the jury returned during deliberations and asked to take an exhibit into the jury room, and the defense counsel who had objected stated that he had no objection. The attorney was not bound by his first objection and was within his rights to change his opinion. The Court of Appeals would not accept that attorneys should be allowed to take one position before the jury and another before the trial judge; furthermore, the trial court was prepared to dismiss the jury before deciding the issue, thus giving the Hospital's attorney an opportunity to object outside the presence of the jury. Having apparently thought that the better strategy was to offer his consent in the presence of the jury, the attorney cannot now complain.

**Am Jur 2d, Trial §§ 1665, 1692.**

Appeal by defendant and plaintiff from judgment entered 8 November 1991 in Watauga County Superior Court by Judge Claude S. Sitton. Heard in the Court of Appeals 10 June 1993.

DIXON v. TAYLOR

[111 N.C. App. 97 (1993)]

*Michael E. Mauney and John Alan Jones for plaintiff-appellee/appellant.*

*Mitchell, Blackwell & Mitchell, P.A., by W. Harold Mitchell and Keith W. Rigsbee, for defendant-appellee Russell C. Taylor, M.D.*

*Dameron and Burgin, by E. Penn Dameron, Jr. and Charles E. Burgin, for defendant-appellant Watauga Hospital, Inc.*

GREENE, Judge.

The defendant Watauga Hospital, Inc. (Hospital) appeals from a judgment entered 8 November 1991 ordering it to pay the sum of $900,000 to William N. Dixon, Administrator of the Estate of Willie L. Dixon (plaintiff). Plaintiff appeals from the portion of that judgment ordering that plaintiff recover nothing of defendant Dr. Russell Taylor (Dr. Taylor).

The evidence before the trial court revealed that Willie L. Dixon (Mrs. Dixon) was admitted to the Hospital during the morning of 23 September 1984, under the care of Dr. Charles Sykes (Dr. Sykes), Dr. Taylor's business partner. Mrs. Dixon was admitted to a regular hospital room and was diagnosed with pneumonia in her right lung. During the evening of 23 September, Mrs. Dixon's condition began to deteriorate and Dr. Sykes ordered Mrs. Dixon to be moved to the Intensive Care Unit (ICU).

Mrs. Dixon's condition continued to deteriorate and at 2:40 a.m. on 24 September a Code Blue (Code) was called signifying that Mrs. Dixon's cardiac and respiratory functions were believed to have ceased. During this Code, a decision was made to intubate, insert an endotracheal tube into, Mrs. Dixon so that she could be given respiratory support by a mechanical ventilator. Following the Code and during the day of 24 September, Mrs. Dixon stabilized, however, she remained very ill.

Dr. Taylor assumed care of Mrs. Dixon at 9:00 a.m. on 24 September 1984. As Mrs. Dixon's condition stabilized, Dr. Taylor ordered that Mrs. Dixon be gradually weaned from the respirator so it could be determined whether she could be extubated, the endotracheal tube removed, that evening.

Around 9:45 p.m. on 24 September, Dr. Taylor went to Mrs. Dixon's room and instructed Carolyn Thompson (Thompson), a critical

care nurse employed by the Hospital, to summon John Blackham (Blackham), a respiratory therapist employed by the Hospital, to Mrs. Dixon's room. Dr. Taylor testified that when he returned to Mrs. Dixon's room, Thompson and Blackham were in the room and the decision was made to extubate Mrs. Dixon. Dr. Taylor further testified that one of the factors in his decision to extubate was a statement by Blackham that Mrs. Dixon was ready to be extubated. Blackham, however, testified he never made any statement indicating Mrs. Dixon was ready to be extubated, and that the decision to extubate was made by Dr. Taylor.

Prior to extubating Mrs. Dixon, the bed was rolled up so Mrs. Dixon would be in the proper position to be extubated. Additionally, Blackham went through the normal procedure of instructing and questioning the patient before the extubation. Mrs. Dixon, however, did not respond to Blackham's instructions or questions. Blackham was surprised and concerned about Mrs. Dixon's failure to respond, but did not express these concerns to Dr. Taylor. Mr. Blackham did look at Dr. Taylor as to say, "do you want me to extubate her?", and Dr. Taylor instructed Blackham to extubate Mrs. Dixon.

Mrs. Dixon was extubated at 10:15 p.m. on 24 September. After the extubation Blackham placed nasal prongs on Mrs. Dixon, and she initially breathed on her own. Dr. Taylor left Mrs. Dixon's room to advise her family that she had been extubated. Blackham decided an oxygen mask would better provide oxygen to Mrs. Dixon but could not locate an oxygen mask in the ICU, so he left the ICU and went across the hall to the Critical Care Unit (CCU). When Blackham returned to Mrs. Dixon's room with the oxygen mask and placed it on Mrs. Dixon he realized that she was not breathing properly. After checking Mrs. Dixon's airway and hearing no air movement, Blackham realized that she would have to be reintubated as quickly as possible.

Before Mrs. Dixon could be reintubated it was necessary for the hospital staff to remove the bed rails, roll down the bed, and remove Mrs. Dixon's restraints so she could be properly positioned for reintubation. While Mrs. Dixon was being prepared for reintubation her heart stopped and a second Code was called at 10:30 p.m. Bonnie Shackleford (Shackleford), a nurse in the Cardiac Critical Care Unit, responded to the Code and began to chart the Code sheet. During a Code, a Code nurse accurately records on the Code sheet everything that is done during the Code and exactly

when it is done. Shackleford recorded on the Code sheet that she arrived in Mrs. Dixon's room at 10:30 p.m. She testified that upon arriving in the room she observed Blackham unsuccessfully attempting to intubate Mrs. Dixon. Shackleford testified that Blackham said he had too short of a blade and he needed a medium, a Number 4 MacIntosh laryngoscope blade, which was not on the Code cart. The Code cart is a cart equipped with all the medicines, supplies and instruments needed for a Code emergency. The Code cart in the ICU had not been restocked after the first Code that morning, so Shackleford was sent to obtain the needed blade from the CCU across the hall from the ICU.

When Shackleford returned to the ICU, the Number 4 MacIntosh blade was passed to Dr. Taylor who had responded to the Code and was attempting to reintubate Mrs. Dixon. Upon receiving the Number 4 MacIntosh blade, Dr. Taylor was able to quickly intubate Mrs. Dixon. Reintubation was recorded on the Code sheet at 10:33 p.m. and a heart beat was first recorded at 10:35 p.m. Mrs. Dixon was placed on a ventilator, but she never regained consciousness.

Neurological evaluation after the second Code procedure indicated that Mrs. Dixon was brain dead secondary to suffocation. After the family was informed there was no hope that Mrs. Dixon would recover the use of her brain, the family requested that no extraordinary measures be taken to prolong her life. Ultimately, Mrs. Dixon was discharged from the Hospital to a rest home where she remained until her death in July, 1985, from aspiration pneumonia, a normal complication of a chronic vegetative state.

Plaintiff filed a medical negligence claim against Dr. Taylor and the Hospital. Trial began on 21 October 1991 and lasted three weeks. The Hospital's motions for directed verdict were denied by the trial court, and the jury found the Hospital was negligent in causing the death of Mrs. Dixon and liable to plaintiff for $900,000. The jury found that Dr. Taylor was not negligent. Following the verdict, the Hospital made motions for judgment notwithstanding the verdict and a new trial, both of which were denied.

---

The issues presented are whether (I) there was insufficient evidence of proximate causation presented at trial for the case to be submitted to the jury, therefore making it error for the trial court to deny the Hospital's motions for directed verdict and

DIXON v. TAYLOR

[111 N.C. App. 97 (1993)]

judgment notwithstanding the verdict; (II) the trial court erred in its jury instruction as to the standard of care of a respiratory therapist; and (III) it was error for the trial court to allow the jury to take an exhibit into the jury room during deliberations.

I

[1] The Hospital argues in its brief that the trial court erred in denying its motions for directed verdict, judgment notwithstanding the verdict and new trial because there was insufficient evidence introduced at trial of a breach of duty by the Hospital. The Hospital, however, only assigned error to the question of the sufficiency of evidence as to proximate causation and we thus address only that issue. N.C. R. App. P. 10(a) (appeal limited to those issues raised in the assignments of error). This Court will therefore assume there was sufficient evidence presented at trial to establish a duty and a breach of that duty by the Hospital.

[2] The parties agree that the evidence offered at trial relates to whether the Hospital was negligent in one or more of the following respects: failing to adequately assess the patient as a candidate for extubation; failing to communicate any concern about the patient's readiness for extubation to Dr. Taylor prior to the extubation; failing to stock the Code cart with a Number 4 MacIntosh blade; and failing to properly position the patient, after the extubation, for a possible reintubation. In order to support submission of the issue of negligence to the jury on each of the claims of negligence, plaintiff is required to offer evidence of the essential elements of negligence (duty, breach of duty, proximate cause and damages), *Garrett v. Overman*, 103 N.C. App. 259, 262, 404 S.E.2d 882, 884, *disc. rev. denied*, 329 N.C. 787, 408 S.E.2d 519 (1991), on each of the claims. *See Di Egidio v. Kealy*, 162 N.E.2d 171, 173 (Ohio Ct. App. 1959). Upon proper motion by the defendant, plaintiff's failure to offer such proof requires the trial court to withdraw that claim from consideration by the jury. *Id.* A motion on this basis must specifically assert the grounds on which it is made. *See Hall v. Mabe*, 77 N.C. App. 758, 760, 336 S.E.2d 427, 428 (1985) (motion for directed verdict must "state the grounds therefor"). That is, the motion must allege with particularity the deficiencies that exist with respect to each separate claim of negligence. A failure to so allege justifies submission to the jury of the multiple claims of negligence if there is substantial evidence in the record, considered in the light most favorable to the plaintiff,

*see Hines v. Arnold*, 103 N.C. App. 31, 34, 404 S.E.2d 179, 181-82 (1991), of the essential elements of negligence on any one of the multiple claims.

In this case the Hospital's motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence, as well as the motion for judgment notwithstanding the verdict were on the basis that the "evidence was insufficient to justify the verdict inasmuch as the Plaintiff offered no evidence whatever of proximate causation as to the Hospital." The Hospital, in its motions, did not attempt to distinguish between the different claims of negligence asserted by plaintiff, instead relying on the general claim that plaintiff's evidence was deficient as to proximate cause. Furthermore, the Hospital did not object to the jury instructions, in which the trial court instructed on three different "contentions" of negligence and did not object to the submission to the jury of a single issue of negligence. Thus, if there is substantial evidence in the record, considered in the light most favorable to the plaintiff that any one of the four claims of negligence, asserted by plaintiff, was a proximate cause of plaintiff's injuries, the trial court correctly denied the Hospital's motions for directed verdict and the judgment notwithstanding the verdict. *See Brown v. Brown*, 104 N.C. App. 547, 549, 410 S.E.2d 223, 225 (1991), *cert. denied*, 331 N.C. 383, 417 S.E.2d 789 (1992) (motions for directed verdict and judgment notwithstanding the verdict require application of the same standards).

[3]   One of plaintiff's claims of negligence was that the Hospital failed to stock the Code cart with the appropriate laryngoscope blade. This negligent act, plaintiff contends, was a proximate cause of plaintiff's injuries because it resulted in a delay in reintubation and that this delay caused the injuries.

Proximate cause is defined as:

a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, *and* one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

DIXON v. TAYLOR

[111 N.C. App. 97 (1993)]

*Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) (emphasis added). The actor need not foresee the events which are merely possible, but only those which are reasonably foreseeable. *Adams v. Mills*, 312 N.C. 181, 193, 322 S.E.2d 164, 172 (1984).

Viewed in the light most favorable to the plaintiff, the evidence establishes that the Hospital's breach of duty in not having the Code cart properly restocked resulted in a three-minute delay in the intubation of Mrs. Dixon. Plaintiff offered the testimony of Code nurse Shackleford to show that the failure to restock the cart resulted in a three-minute delay in Mrs. Dixon's reintubation. Shackleford testified that she observed Blackham attempting unsuccessfully to intubate Mrs. Dixon at 10:30 p.m., and that at 10:33 p.m. Dr. Taylor was successfully able to intubate Mrs. Dixon after she retrieved the needed Number 4 MacIntosh blade. Plaintiff introduced the Code sheet into evidence to corroborate Shackleford's testimony as to the period of time between the observance of the attempt by Blackham to intubate and the successful intubation.

Substantial evidence was introduced at trial that the three-minute delay caused by the Hospital's breach of duty was the proximate cause of Mrs. Dixon's brain death. Plaintiff's expert witness, Dr. Evan McLeod (Dr. McLeod), testified that the Hospital employees' breach of duty, in not being prepared to promptly reintubate Mrs. Dixon, proximately caused Mrs. Dixon's brain death. Dr. McLeod expressed his expert opinion as to the cause of Mrs. Dixon's brain death during his cross-examination by defense counsel:

Q: And if he testified, if he has testified, and will testify, and the jury should find from all of the testimony in this case that Doctor Taylor said that there was absolutely no delay in the intubation of this patient from either bringing the blade in or from cranking the bed down, would you agree with that testimony?

A: I don't think it is physically possible to crank a bed down, and reposition a patient and intubate a patient in no time. Time must elapse. It may be questionable as to how much time elapsed. I think the critical thing is that sufficient time elapsed that the patient suffered a severe anoxic brain injury.

It is apparent that Dr. McLeod's opinion was that the delay caused by the Hospital employees' breach of duty was sufficient to cause

Mrs. Dixon's brain death. Furthermore, the defendant's own expert, Dr. Robert Shaw, testified that a three-minute delay in the patient receiving oxygen is enough time to cause serious brain injury.

Reasonable minds could accept from the testimony at trial that the Hospital's breach of duty was a cause of Mrs. Dixon's brain death, without which the injury would not have occurred. Foreseeability on the part of the Hospital can be established from the evidence introduced by the plaintiff that the written standards for Watauga Hospital, Inc. require every Code cart be stocked with a Number 4 MacIntosh blade. This evidence permits a reasonable inference that the Hospital should have foreseen that the failure to have the Code cart stocked with a Number 4 MacIntosh blade could lead to critical delays in intubating a patient. Accordingly, there was substantial evidence that the failure to have the Code cart stocked with the proper blade was a proximate cause of Mrs. Dixon's injuries. Therefore, because this was one of the claims of negligence asserted by plaintiff, the trial court was correct in denying the Hospital's motions for directed verdict and judgment notwithstanding the verdict. Furthermore, there was no abuse of discretion in the trial court's denial of the Hospital's motion for new trial. *Britt v. Allen*, 291 N.C. 630, 635, 231 S.E.2d 607, 611 (1977) (motion for new trial addressed to the discretion of the trial court).

II

[4] The Hospital argues that the trial court committed error in the jury instructions regarding the standard of care for a respiratory therapist. The relevant part of the instruction in this case as to the standard of care required of Blackham reads as follows:

the respiratory therapists [sic] must perform his duties to the patient in accordance with the standards of practice that may differ from those of someone not so specializing in respiratory therapy, or in the respiratory therapy field.

We do not read this instruction, as the Hospital suggests, as permitting the jury to hold Blackham to a higher standard of care in respiratory therapy than the standard of care of a "general practitioner" in respiratory therapy. The jury was only instructed to hold Blackham to the standard of care of a respiratory therapist and thus was not error.

### III

[5]   The Hospital finally argues it was error for the trial court to allow the jury to take an exhibit into the jury room during deliberations.

During jury deliberation, Dr. Taylor's attorney, Mr. W. Harold Mitchell, stated to the trial court, in the absence of the jury, that he objected to any exhibits being taken into the jury room. During deliberations the jury was returned and the following dialogue occurred:

> FOREPERSON: Your Honor, would we be permitted to take [the blood gas chart blow up] back into the room with us.

> MR. JONES: No objection from the Plaintiff.

> THE COURT: I will have to make that decision in your absence.

> MR. BURGIN [Counsel for Hospital]: We have no objection, Your Honor.

> MR. MITCHELL: No objection, Your Honor.

> THE COURT: All right, there being no objection, the Court will permit you to take Exhibit 29 back into the Jury room. Does that answer your question?

After the jury resumed deliberations the following exchange between the defendants' counsel and the court occurred:

> MR. BURGIN: Your Honor, we were put in a position where we absolutely couldn't say anything, but we didn't object.

> THE COURT: All right, now, do not, if the Jury comes back in make a statement in the presence of the Jury, that is not fair, having been previously an objection made for the presentation of any exhibits in the Jury room, that would not be fair. Do not, it did put the Defendants over a barrel, the objection having previously been raised. That raises a point on appeal that may cause somebody some difficulty.

> MR. BURGIN: Would the Court consider asking the Bailiff to have that thing removed from the Jury room?

> THE COURT: Well, whether or not you were put over a barrel, you nevertheless did allow it to be submitted, you

said you had no objection. The Court takes your last statement, even under the possible coerce [sic] by the Plaintiff having said they had no objection. In order not to show favoritism or some objection, the Court will not obtain it from the Jury and will allow it to go under the latest statement made by counsel, that being, no objection.

MR. BURGIN: I would like the record to show, understand I am not fussing at the Court. I would like the record to show that for my part the objection was made with form only and not in substance I felt like I had no choice but to make that objection in light of the plaintiff counsel's statement and would like the record to show that, and feel like it was — well, that is all.

THE COURT: Well, the objection is overruled, and as I recall, I don't think there was an objection made by counsel for Defendant, Hospital. As I recall, the only objection by counsel for Defendant, Taylor.

MR. BURGIN: That is true, initially, but there should be no need for an objection until it happened.

MR. MITCHELL: But when I did make my objection to allowing the exhibit to be taken in, I expressly stated that it puts the party to a disadvantage for one of the parties to say, take these exhibits in, we don't care, and another party to object to it. That is the reason I did it in the absence of the Jury. I thought it was clear the reason I did it. And I think it is clear the reason Mr. Jones was so prompt in saying, "We don't object to it."

THE COURT: Well, I can't undo, I don't feel like, what has transpired. However, it is part of the record. It may be something at some later time some appellate Court will make some ruling, but I at this time do not feel that I should attempt to correct the situation any differently. Therefore the Court denies the objection and the request to ask the Bailiff to take the exhibit from the Jury.

It is well established that it is error to allow the jury to take exhibits into the jury room during deliberations without the consent of all parties. *Robinson v. Seaboard System R.R., Inc.,* 87 N.C. App. 512, 527, 361 S.E.2d 909, 919 (1987), *disc. rev. denied,* 321 N.C. 474, 364 S.E.2d 924 (1988). Specific consent from the parties

DIXON v. TAYLOR

[111 N.C. App. 97 (1993)]

is required to allow the jury to take exhibits into the jury room during deliberations, therefore, an indication of an unwillingness to consent is sufficient to make it error to allow the exhibits into the jury room. *Doby v. Fowler*, 49 N.C. App. 162, 164, 270 S.E.2d 532, 533 (1980). The issue is whether the trial court was correct in relying on the consent of the attorney given in open court, in the presence of the jury, or was bound by the previous objection entered out of the presence of the jury.

We believe the court correctly relied on the last statement of the attorney to the court on the issue of a jury view of the exhibits. The attorney was not bound by his earlier objection and was within his rights to change his opinion on the question and the record reflects that he did. We are unable to accept that attorneys should be allowed to take one position before the jury and another before the trial judge. Furthermore, we do not accept the Hospital's argument that its attorney was forced to voice his consent before the jury because of the consent voiced by the plaintiff's attorney. The trial court was prepared to dismiss the jury before deciding the issue thus giving the Hospital's attorney an opportunity to object outside the presence of the jury. Apparently the attorney thought the better trial strategy was to offer his consent in the presence of the jury. The Hospital's attorney thus made his choice and cannot now complain. Therefore there was no error committed by the trial court in permitting the exhibit to be taken into the jury room.

Plaintiff has appealed the portion of the judgment decreeing defendant Dr. Taylor not liable. During oral argument plaintiff's counsel stated it would abandon its appeal if the court held there was no error in the judgment decreeing the Hospital liable. Because the Hospital's liability is affirmed, we accordingly do not consider plaintiff's appeal.

No error.

Judges JOHNSON and WYNN concur.