MICHAEL COBO AND VIRGINIA COBO v. ERNEST A. RABA, M.D.

No. COA95-170

(Filed 18 February 1997)

**1. Physicians, Surgeons, and Other Health Care Professionals § 120 (NCI4th)— medical malpractice—psychiatrist—contributory negligence**

The trial court erred in a negligence action against a psychiatrist by not instructing the jury on the issue of plaintiff Michael Cobo's contributory negligence where the action claimed misdiagnosis and negligent treatment and there was evidence that Michael Cobo's conduct during the time he was being treated by the defendant joined simultaneously with the negligent treatment of the defendant to cause Cobo's injuries. Contributory negligence must be submitted to the jury when the trial court submits only one issue with respect to multiple claims of negligence and defendant's contentions concerning contributory negligence would be inappropriate as to one claim but may not be inappropriate as to another. Further, there was evidence that Cobo had refused to pursue a suggested course of treatment involving medicine and requested that defendant take no notes during the sessions.

**Am Jur 2d, Negligence §§ 846, 853, 1108.**

**2. Limitations, Repose, and Laches § 24 (NCI4th)— psychiatric malpractice—statute of limitations—continued course of treatment**

The continuing course of treatment doctrine was applicable to a malpractice claim against a psychiatrist where plaintiff began his treatment in 1980, the sessions after 1986 primarily

COBO v. RABA

[125 N.C. App. 320 (1997)]

dealt with plaintiff's newly diagnosed HIV status, the doctor-patient relationship terminated in 1988, and defendant contended that the three-year statute of limitations of N.C.G.S. § 1-15(c) barred any actions arising out of treatment rendered before 1986. Defendant continued to treat plaintiff after 1986 for conditions that plaintiff alleged were caused by defendant's negligence before 1986 and the treatment did not change in that plaintiff continued to meet with defendant four times a week to discuss his problems and to learn how to control and manage those problems.

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 320.**

Judge McGEE dissenting in part and concurring in part.

Appeal by defendant from judgment entered 15 June 1994 in Durham County Superior Court by Judge Henry W. Hight, Jr. Heard in the Court of Appeals 14 November 1995.

*Maxwell, Freeman & Bowman, P.A., by James B. Maxwell, for plaintiff-appellees.*

*Anderson, Broadfoot, Johnson, Pittman & Lawrence, by Lee B. Johnson, and Ragsdale, Liggett & Foley, by George R. Ragsdale and Kristin K. Eldridge, for defendant-appellant.*

GREENE, Judge.

Ernest Raba (defendant) appeals a judgment entered against him in the amount of $850,000 after a jury found that Michael Cobo (Cobo) was injured by defendant's negligence.

Defendant is a psychiatrist practicing in the Durham, North Carolina area. Cobo began to see defendant as a patient when Cobo moved to Durham to accept a job at Duke Medical School. Cobo had previously been diagnosed and treated for depression during medical school and during his residency in Miami. During treatment for depression in Miami, Cobo had been treated with an antidepressant drug which produced adverse side effects. In late 1980 Cobo began a course of treatment with defendant who diagnosed Cobo as suffering from chronic depression. The treatment consisted of psychoanalysis four times a week which continued until December 1986, when Cobo tested positive for HIV.

Cobo told defendant that he did not wish to be treated with medication because his previous treatment with medication had "affected him badly" and had been unhelpful. Further, during the initial sessions defendant did not take notes pursuant to Cobo's request. Cobo was worried about protecting his identity and keeping the treatment a secret.

During his time in psychoanalysis with defendant, Cobo's depression became worse, which negatively affected his marriage, relationships with co-workers, and his job to the point that he was eventually removed from Duke's tenure track. Beginning in 1982 or 1983, he increased his abuse of alcohol and his use of marijuana, which he had begun using before seeking treatment from defendant. In 1981 Cobo began having sex with males "on a monthly basis," including sex with male prostitutes. Cobo had sex with other men before he began seeing defendant, but only infrequently. Defendant advised Cobo that he "was making some very dangerous choices [about sexual partners and homosexual activity] and recommended that they stop," and talked to Cobo about the risk of sexually transmitted diseases.

After Cobo was diagnosed with HIV, defendant began to treat him in a more supportive manner, offering more practical feedback and suggestions on ways to deal with his HIV status, including getting medical care, his substance abuse and how to tell his wife. After being diagnosed with HIV, defendant prescribed a medication for Cobo to treat his anxiety as well as depression and continued to see defendant four times a week. In December 1988 the doctor-patient relationship between Cobo and defendant was terminated and Cobo began seeing another psychiatrist who prescribed an antidepressant medication. Once the medication took effect, Cobo's depression improved.

Dr. John Monroe, Jr., an expert in the field of psychiatry, testified that "major depression," from which Cobo was suffering, was a "biologic disregulation" that has to do with "chemical imbalances."

Cobo and his wife Virginia Cobo (collectively plaintiffs) filed a complaint against defendant seeking damages and alleging misdiagnosis and negligent treatment. Plaintiffs' complaint also alleged that "early on in the treatment" defendant "discouraged the use of any medications" and "failed to prescribe appropriate medications," continued to treat Cobo with psychotherapy when he knew or should have known that it was less effective than other methods, including prescribing medications, and defendant "failed to keep notes on his

sessions with [Cobo] in order to follow the course and effect, or lack thereof, of his therapy."

Defendant claimed as affirmative defenses that Cobo was contributorily negligent and that the claims for acts occurring prior to December 1986 were barred by the statute of limitations.

Defendant's request that the trial court instruct the jury on contributory negligence was denied. Defendant also requested that the trial court instruct the jury on the statute of limitations, contending that all claims arising from conduct occurring before December 1986 were barred because after plaintiff was diagnosed as HIV positive, defendant's treatment of plaintiff was "completely different." The trial court denied this request as well. The trial court submitted a single issue of negligence to the jury ("Was the plaintiff . . . injured by the negligence of the defendant") and instructed them to answer the issue "yes" if they determined that Cobo had met his burden of proving either negligent diagnosis or negligent treatment.

The issues are whether (I) an instruction on contributory negligence should have been submitted to the jury; and (II) all claims relating to conduct occurring before December 1986 are barred by the statute of limitations.

I

[1] The trial court must instruct the jury on a claim or defense if there is substantial evidence, when viewed in the light most favorable to the proponent, of the claim or defense. *Dixon v. Taylor*, 111 N.C. App. 97, 103, 431 S.E.2d 778, 781 (1993); *see Holtman v. Reese*, 119 N.C. App. 747, 750, 460 S.E.2d 338, 341 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Wheeler*, 122 N.C. App. 653, 656, 471 S.E.2d 636, 638 (1996).

Contributory negligence is "negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant . . . to produce the injury of which the plaintiff complains." *Watson v. Storie*, 60 N.C. App. 736, 738, 300 S.E.2d 55, 57 (1983).

> [T]o . . . constitute contributory negligence in a medical malpractice action, a patient's negligence must have been an active and efficient contributing cause of the injury, must have cooperated with the negligence of the malpractitioner, must have entered

into proximate causation of the injury, and must have been an element in the transaction on which the malpractice is based.

*Jensen v. Archbishop Bergan Mercy Hosp.*, 459 N.W.2d 178, 186 (Neb. 1990); *see* David M. Harney, *Medical Malpractice* § 24.1, at 563-64 (3d ed. 1993) (hereinafter *Harney*). Failure to follow a physician's instructions may also give rise to contributory negligence. *McGill v. French*, 333 N.C. 209, 220-21, 424 S.E.2d 108, 114-15 (1993); *see Harney* § 24.1(A), at 564-65. When a patient's negligent conduct occurs subsequent to the physician's negligent treatment instead of concurrently or simultaneously, recovery by the patient should be mitigated and not completely defeated pursuant to a contributory negligence theory. *Harney* § 24.5, at 571; *Miller v. Miller*, 273 N.C. 228, 239, 160 S.E.2d 65, 74 (1968) (contrasting contributory negligence with the "doctrine of avoidable consequences"). Expert testimony is not necessary to establish proximate cause when the jury, using its "common knowledge and experience, is able to understand and judge the action of [plaintiff]." *McGill*, 333 N.C. at 218, 424 S.E.2d at 113 (quoting *Powell v. Shull*, 58 N.C. App. 68, 71, 293 S.E.2d 259, 261, *disc. rev. denied*, 306 N.C. 743, 295 S.E.2d 479 (1982)).

Contributory negligence as a defense is inapplicable "where a patient's conduct provides the occasion for care or treatment that, later, is the subject of a malpractice claim, or where the patient's conduct contributes to an illness or condition for which the patient seeks the care or treatment on which a subsequent medical malpractice [claim] is based." *Harney* § 24.1, at 564. In other words, a person's use of alcohol cannot constitute contributory negligence in a malpractice action against a physician treating him for alcohol abuse. *See Cowan v. Doering*, 522 A.2d 444, 450 (N.J. Super. 1987) (patient under physician's care for taking an overdose of sleeping pills who jumped out of window and brought malpractice action against physician for failure to take precautionary steps to prevent her attempt at suicide was not contributorily negligent because the suicidal conduct was the very symptom for which patient was being treated), *aff'd*, 545 A.2d 159 (N.J. 1988). On the other hand, a person's use of alcohol could constitute contributory negligence in a malpractice action against a physician treating that person for a broken back, provided the use of alcohol simultaneously joined with the physician's negligence in contributing to the injuries.

In this case Cobo sought care and treatment for his depression. On the face of this record there is evidence that a reasonable mind

COBO v. RABA

[125 N.C. App. 320 (1997)]

might accept as adequate to support the conclusion that Cobo's sexual activities with other men did not contribute to the depression for which he sought treatment from defendant. Although there is evidence that Cobo was having intermittent sex with other men prior to his treatment by the defendant, there is no evidence that his sexual activities (prior to or during his treatment by the defendant) was the cause of his depression. Indeed, there is evidence that Cobo's depression was the result of a biological condition. Accordingly, because there is substantial evidence that Cobo's conduct during the time he was being treated by the defendant joined simultaneously with the negligent treatment[1] of the defendant to cause Cobo's injuries, the trial court erred in not submitting the issue of contributory negligence to the jury on this basis.[2]

There are also other grounds that support submission of the issue of contributory negligence. Defendant produced substantial evidence that he was hindered in his diagnosis and treatment due to several conditions Cobo imposed on him. Cobo initially refused to pursue a course of treatment involving medication due to the effects that a previous medication had upon him. Further, to ensure that his confidentiality was protected, Cobo requested that defendant take no notes during the sessions. Thus there is substantial evidence that these actions by Cobo occurred simultaneously with defendant's negligent treatment and diagnosis to cause Cobo's injuries.

II

[2] Defendant contends that the three year statute of limitations is a bar to any action arising out of treatment rendered before December 1986. Defendant argues that the treatment rendered after December 1986 was distinctly different from that rendered before

---

1. We acknowledge that Cobo's sexual activities during the period of his treatment by the defendant cannot constitute contributory negligence with respect to the negligent diagnosis claim. This is so because that conduct occurred subsequent to the diagnosis. When, however, the trial court submits only one issue to the jury with respect to multiple claims of negligence by the plaintiff and defendant's contentions concerning plaintiff's contributory negligence would be inappropriate as to one of plaintiff's claims, i.e., negligent diagnosis, the contributory negligence issue must be submitted to the jury if the actions by plaintiff may constitute contributory negligence as to another of plaintiff's claims, i.e., negligent treatment. See McGill, 333 N.C. at 216, 424 S.E.2d at 112.

2. Of course, on retrial whether the issue of contributory negligence is to be submitted to the jury must be determined on the basis of the evidence presented at the new trial, not on the basis of the evidence in this record, and on the basis of the law as set forth in this opinion.

December 1986, and therefore the continuing course of treatment doctrine is inapplicable.

Section 1-15(c) provides that a cause of action for malpractice accrues "at the time of the occurrence of the last act of the defendant giving rise to the cause of action." N.C.G.S. § 1-15(c) (1996). Pursuant to section 1-15(c), a cause of action for malpractice has a statute of limitations of three years. Pursuant to the continued course of treatment doctrine, however, a cause of action does not accrue until the conclusion of the physician's treatment of the patient, so long as the patient has remained under the continuous treatment of the physician for the injuries which gave rise to the cause of action. *Stallings v. Gunter*, 99 N.C. App. 710, 714, 394 S.E.2d 212, 215, *disc. rev. denied*, 327 N.C. 638, 399 S.E.2d 125 (1990). It is not necessary that the treatment rendered subsequent to the negligent act be negligent if the physician continued to treat the patient for the disease or condition created by the original act of negligence. *Id.* at 714-15, 394 S.E.2d at 215.

At the same time that Cobo tested positive for HIV, defendant began a "more supportive" form of analysis and prescribed medication for Cobo's anxiety. Cobo's treatment, however, did not change in that Cobo continued to meet with defendant four times a week to discuss his problems and to learn how to control and manage those problems, although after 1986 the sessions primarily dealt with Cobo's HIV status. We determine that despite any change in treatment, because defendant continued to treat Cobo after 1986 for conditions that Cobo has alleged were caused by defendant's negligence before 1986, the continuing course of treatment doctrine is applicable and plaintiffs' action was timely filed.

We have addressed and reject without discussion the defendant's argument that the trial court erred in denying his motions for directed verdict and post trial motions. Because we are ordering a new trial, it is not necessary to address the other issues raised on appeal.

New trial.

Judge MARTIN, Mark D., concurs.

Judge McGEE dissents in part and concurs in part.

COBO v. RABA

[125 N.C. App. 320 (1997)]

Judge McGEE dissenting in part, and concurring in part.

I respectfully dissent as to the part of the majority opinion which finds the trial court erred in not submitting the issue of contributory negligence to the jury, but concur as to the majority's decision that the continuing course of treatment doctrine is applicable in this case and plaintiffs' action was timely filed.

In this case, Dr. Cobo sought treatment for depression and participated in psychoanalysis sessions conducted by defendant four times a week for approximately eight years. Dr. Cobo and his insurance provider were charged approximately $100,000 for defendant's services. During this time, Dr. Cobo's depression grew progressively worse, to the point of jeopardizing his marriage and career. As the depression deepened, he had crying spells, began to abuse alcohol and drugs, and increased the frequency of his homosexual encounters. Despite Dr. Cobo's contention that he was going "through Hell," defendant never suggested or volunteered as a possibility that Dr. Cobo see another psychiatrist, nor did he offer an alternative in the treatment. Any suggestion by Dr. Cobo that someone else or some other treatment might be helpful "was met with the same either analytic silence or pushing it off to the side." Later in the treatment, when Dr. Cobo suggested the possibility of medication, defendant told him it "might distance [him] from [his] feelings and make it difficult to participate in the analysis."

Dr. Cobo ended his treatment with defendant in December 1988. He began treatment with another psychiatrist who prescribed antidepressant drugs, including Prozac and a tricyclic drug widely available in 1980. Upon taking the antidepressant medication, Dr. Cobo testified his life improved dramatically, that there "was a sense of happiness that I was connected to my kids, to my wife, and that there was . . . that there was a reason to live other than just to suffer."

Dr. Monroe, plaintiffs' expert witness in psychiatry, testified that, in his opinion, Dr. Cobo suffered from major depression which had gone untreated by defendant. Dr. Monroe testified defendant incorrectly diagnosed Dr. Cobo as suffering from chronic depression, which usually results from an event or occurrence in a person's life. He testified major depression represents a biological disregulation which is highly treatable and responds well to medication. He also testified analytic therapy does not work well with major depression because the patient is too depressed to adequately participate in it. Dr. Monroe testified it was his opinion that defendant had not con-

formed to the standard of care for physicians similarly trained and situated in Durham in his treatment of Dr. Cobo from 1980 to 1988. Dr. Monroe testified that, in his opinion, Dr. Cobo's psychiatric condition would have been improved from 1980 to 1988 if defendant rendered appropriate psychiatric treatment and care, and that the continuation of Dr. Cobo's major depression contributed to his engaging in at-risk behavior.

The majority holds the evidence showing Dr. Cobo continued to engage in self-destructive behavior while in therapy with defendant constitutes evidence of contributory negligence, entitling defendant to a jury instruction on that issue. However, I believe the evidence of Dr. Cobo's conduct during therapy properly bore on the issue of minimizing of damages.

> The rule in North Carolina is that an injured plaintiff, whether his case be in tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any part of the loss incident to such failure, no recovery can be had. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable. It has its source in the same motives of conservation of human and economic resources as the doctrine of contributory negligence, but "comes into play at a later stage."

> "The doctrine of avoidable consequences is to be distinguished from the doctrine of contributory negligence. Generally, they occur—if at all—at different times. Contributory negligence occurs *either before or at the time of* the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable."

*Miller v. Miller*, 273 N.C. 228, 239, 160 S.E.2d 65, 73-74 (1968) (citations omitted, emphasis added). Here, plaintiffs' complaint alleged three theories of negligence: 1) defendant "failed to exercise reasonable care and diligence in the application of his knowledge, skill and ability in the care and treatment of . . . Cobo beginning approximately

September 20, 1980 and continuing through March, 1989"; 2) defendant "failed to exercise his best medical judgment in the treatment and care" of Dr. Cobo; and 3) defendant "failed to exercise that degree of care and skill in diagnosing Michael Cobo's condition and in treating that condition as would be in accordance with the standards of practice among members of the same medical profession, and particularly among physicians with similar training and experience to the Defendant Ernest A. Raba, who were situated in the same or similar communities as him at the time period set forth in the Complaint." Plaintiffs' negligence claims and the evidence presented at trial show plaintiffs proceeded on a theory that defendant misdiagnosed Dr. Cobo's condition and began an improper treatment based on the misdiagnosis. Further, defendant continued that negligent treatment after it became, or should have become, apparent the treatment was not working and Dr. Cobo's condition was worsening. Therefore, under plaintiffs' theory of defendant's negligence, Dr. Cobo's conduct and behavior during therapy, alleged by defendant to be contributory negligence, did not arise "before or at the time" of defendant's wrongful act or omission. *See Miller, supra.*

As the majority correctly points out, Dr. Cobo's conduct during treatment could not constitute contributory negligence regarding his claim of an improper diagnosis. However, I believe the majority incorrectly separates when the claim for improper diagnosis arose from when plaintiffs' claim for improper treatment arose. Because the improper treatment was based upon the incorrect diagnosis, and defendant began the improper treatment at the start of the doctor/patient relationship, defendant's negligence occurred at the very beginning of Dr. Cobo's treatment. From the start of the relationship, defendant treated Dr. Cobo through psychoanalysis, a course of treatment that plaintiffs' expert witness testified does not work adequately for people suffering from major depression. Because defendant's negligence based on improper treatment arose at the start of the relationship, Dr. Cobo's conduct months and years after the beginning of treatment could not constitute contributory negligence under either a theory of improper diagnosis or improper treatment. Therefore, *McGill v. French*, 333 N.C. 209, 424 S.E.2d 108 (1993), cited by the majority, is inapplicable.

Further, the majority states there is no evidence Dr. Cobo's sexual activities were the cause of his depression. While this statement is correct, the evidence actually indicated that Dr. Cobo, although a "fundamentally homosexual" man, engaged in at-risk sexual activity

in reaction to his depression. In fact, his concern over his homosexual tendencies was a factor in seeking treatment. Because he sought treatment for his homosexual activity as a symptom of his depression, Dr. Cobo's position is similar to the alcoholic seeking treatment for alcoholism in the example provided by the majority.

Nor do I agree with the majority that there are other grounds upon which to find contributory negligence. Dr. Cobo initially told defendant he did not wish to take medication because, as a surgeon, he could not afford to be sedated. However, because defendant improperly diagnosed Dr. Cobo, Dr. Cobo was never told his condition was biological in nature. Because Dr. Cobo was never told that his condition would not respond to psychotherapy, but would respond favorably to medication, Dr. Cobo could not make an informed decision about the medication and his initial reluctance to being treated with medication cannot be held to be negligent. Nor does Dr. Cobo's request that defendant keep no notes amount to contributory negligence. Regardless of whether defendant kept notes, he would still have been treating Dr. Cobo with psychoanalysis, which the evidence showed was an improper and ineffective method of treatment.

I find no merit to defendant's remaining arguments and would therefore allow the jury's verdict to stand. Accordingly, I would vote No Error.