REDD v. WILCOHESS, LLC

[225 N.C. App. 726 (2013)]

———————————————

BRENDA HANES REDD, Plaintiff
v.
WILCOHESS, L.L.C., AND A.T. WILLIAMS OIL COMPANY, Defendants

No. COA12-639

Filed 5 March 2013

**1. Premises Liability—negligence—last clear chance—jury instruction—insufficient evidence**

The trial court did not commit reversible error in a negligence case arising out of a slip and fall accident by denying plaintiff's request for a jury instruction on last clear chance. The evidence presented at trial was not sufficient to support a reasonable inference by the jury that defendants' employee had the time and ability to avoid the injury, the third element of the claim.

**2. Premises Liability—negligence—willful and wanton negligence—jury instruction—insufficient evidence**

The trial court did not commit reversible error in a negligence case arising out of a slip and fall accident by denying plaintiff's

REDD v. WILCOHESS, LLC

[225 N.C. App. 726 (2013)]

request for a jury instruction on willful and wanton negligence. The evidence presented at trial was not sufficient to support a reasonable inference by the jury that defendants' employee acted with any purpose or deliberation not to discharge his duty to plaintiff's safety or acted with a wicked purpose or manifested a reckless indifference to plaintiff's safety.

**3. Jury—deliberations—request for surveillance video—specific consent of parties not reached**

The trial court did not err in a negligence case arising out of a slip and fall accident by not submitting a surveillance video to the jury in the jury room during deliberations. The parties never reached the requisite level of specific consent with respect to the questions of whether and how the jury would view the surveillance videotapes.

Appeal by Plaintiff from judgment entered 9 September 2011 by Judge Richard W. Stone in Forsyth County Superior Court. Heard in the Court of Appeals 7 January 2013.

*Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harold L. Kennedy, III, and Harvey L. Kennedy, for Plaintiff.*

*McAngus, Goudelock & Courie, PLLC, by Garry T. Davis and Jeffrey B. Kuykendal, for Defendants.*

DILLON, Judge.

Brenda Hanes Redd (Plaintiff) appeals from a judgment entered 9 September 2011 awarding her nothing to compensate her for her personal injuries sustained in a slip and fall accident allegedly resulting from the negligence of WilcoHess, L.L.C., and A.T. Williams Oil Company (together, Defendants), where the jury found Plaintiff was contributorily negligent. On appeal, Plaintiff contends the trial court erred by denying Plaintiff's requests for jury instructions concerning the issue of last clear chance and the issue of willful and wanton negligence. Plaintiff also contends she "was precluded from receiving a fair trial because of irregularities by the trial court." We find no error.

I: Factual and Procedural Background

The evidence of record is conflicting but tends to show as follows: On 7 December 2003, Plaintiff entered Defendants' WilcoHess convenience store located on Silas Creek Parkway in Winston-Salem (the Wilco) to buy a soda. Prior to the time Plaintiff entered the store, Josh

Fisher (Fisher), a Wilco employee, decided to mop the floor. Plaintiff's evidence showed that a co-worker of Fisher told him that it was too early in the evening to mop because of the steady flow of customers expected during that time. Fisher, however, denies that he was so advised. In any event, Fisher displayed two wet-floor warning signs inside the store—one inside the entranceway and one toward the back—and proceeded to mop. Plaintiff testified that the signs were placed in a way that made them difficult to read.

Upon entering the store, Plaintiff walked to the refrigerator section. Plaintiff gave testimony, which was corroborated by surveillance video[1] evidence, that Fisher saw—or at least looked toward—Plaintiff as she entered the store. Fisher, however, testified that he never saw Plaintiff at any time before she fell.

While Plaintiff was in the refrigerator section, Fisher mopped a section of the floor behind Plaintiff and leading towards the cash register but gave no verbal words of caution to Plaintiff that he was doing so. Plaintiff then walked back toward the cash register, slipped on the wet floor, and fell, sustaining an injury—a herniated disc. Fisher testified, and Plaintiff does not dispute, that he was in a closet at the back of the store emptying the mop bucket with his back turned when Plaintiff fell. Fisher admitted, however, that "it takes about [ten] minutes" for the floor to dry after he mopped it, and the floor of the Wilco was "damp and . . . clean" when Plaintiff walked from the refrigerator to the register. Fisher's co-worker approached Plaintiff to assist her and slipped but did not fall.

On 1 April 2010, Plaintiff filed this action against Defendants.[2] On 21 October 2010, Defendants answered the complaint alleging contributory negligence on the part of Plaintiff, among other defenses. The trial court instructed the jury with respect to the law of contributory negligence but denied Plaintiff's request to instruct the jury concerning last clear chance or willful and wanton negligence. On 18 August 2011, the jury found that Defendants were negligent. However, the jury also found that Plaintiff was contributorily negligent; and therefore, Plaintiff was awarded nothing. From this judgment, Plaintiff appeals.

---

1. The store's surveillance video was not transmitted to the Court on appeal.

2. Two previous lawsuits were filed by Plaintiff in this case, the first filed on 28 November 2006 and voluntarily dismissed on 29 October 2007, and the second filed on 27 October 2008 and dismissed without prejudice on 5 October 2009. After the second dismissal, the court allowed Plaintiff six months to re-file.

**REDD v. WILCOHESS, LLC**

[225 N.C. App. 726 (2013)]

II: Analysis

A: Jury Instructions

In her brief, Plaintiff presents three issues. Plaintiff's first two arguments pertain to the jury instructions. Specifically, Plaintiff argues that the trial court committed reversible error by denying her requests for an instruction on last clear chance and an instruction on willful and wanton negligence. We find both arguments without merit.

"When reviewing the refusal of a trial court to give certain instructions requested by a party to the jury, this Court must decide whether the evidence presented at trial was sufficient to support a reasonable inference by the jury of the elements of the claim." *Ellison v. Gambill Oil Co.*, 186 N.C. App. 167, 169, 650 S.E.2d 819, 821 (2007) (citations omitted), *aff'd per curiam and disc. review improvidently allowed*, 363 N.C. 364, 677 S.E.2d 452 (2009). "If the instruction is supported by such evidence, the trial court's failure to give the instruction is reversible error." *Id.* "The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction." *Hammel v. USF Dugan, Inc.*, 178 N.C. App. 344, 347, 631 S.E.2d 174, 178 (2006) (citations and quotation marks omitted). "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Id.* Generally, "[a] specific jury instruction should be given when (1) the requested instruction was a correct statement of law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury." *Outlaw v. Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008) (citation and quotation marks omitted).

i: Last Clear Chance

[1] In Plaintiff's first argument on appeal, she contends the trial court erred by deciding not to instruct the jury concerning last clear chance. We disagree.

The doctrine of last clear chance "is a plea in avoidance to the affirmative defense of contributory negligence[.]" *Vernon v. Crist*, 291 N.C. 646, 650, 231 S.E.2d 591, 593 (1977). In *Exum v. Boyles*, 272 N.C. 567, 158 S.E.2d 845 (1968), the Court explained the doctrine of last clear chance in the following way:

> [I]t is well established in this State that where the defend-
> ant does owe the plaintiff the duty of maintaining a
> lookout and, had he done so, could have discovered the
> plaintiff's helpless peril in time to avoid injuring him by
> then exercising reasonable care, the doctrine of
> the last clear chance does impose liability if the defend-
> ant failed to take such action to avoid the injury. This
> is in accord with . . . the majority view in other
> American jurisdictions.

*Id.* at 576, 158 S.E.2d at 853 (citations omitted). In order to invoke the doctrine of last clear chance, an injured Plaintiff must establish the following elements:

> 1) The plaintiff, by her own negligence put herself into
> a position of helpless peril;
>
> 2) Defendant discovered, or should have discovered,
> the position of the plaintiff;
>
> 3) Defendant had the time and ability to avoid the injury;
>
> 4) Defendant negligently failed to do so; and
>
> 5) Plaintiff was injured as a result of the defendant's
> failure to avoid the injury.

*Kenan v. Bass*, 132 N.C. App. 30, 33, 511 S.E.2d 6, 7-8 (1999) (citation and quotation marks omitted). The failure of a trial court to submit the issue of last clear chance to the jury when the elements of the doctrine are supported by substantial evidence is error and requires a new trial. *Womack v. Stephens*, 144 N.C. App. 57, 68, 550 S.E.2d 18, 25 (2001), *disc. review denied*, 354 N.C. 229, 555 S.E.2d 277 (2001).

On the specific facts of this case, we do not believe the evidence presented at trial was sufficient to support a reasonable inference by the jury of the elements of last clear chance. Even assuming *arguendo* the other elements have been established, the evidence does not support a reasonable inference as to the third element that Defendants must have had "the time and ability to avoid the injury[.]" *Bass*, 132 N.C. App. at 33, 511 S.E.2d at 7-8. We believe in this case that Plaintiff's "helpless peril" began the moment Plaintiff started slipping on the wet floor. Before she began to slip, her situation was "not one of true helplessness[.]" *Nealy v. Green*, 139 N.C. App. 500, 505, 534 S.E.2d 240, 244 (2000) (holding that "[t]he situation is not one

of true helplessness, as the injured party is in a position to escape[;] [r]ather, the negligence consists of failure to pay attention to one's surroundings and discover his own peril"). Up to the point she began to slip, Plaintiff had the opportunity to discover her peril. At the moment of Plaintiff's helpless peril, when she began to slip, the evidence shows that Fisher was "in the back" of the store, emptying out the mop bucket with his back turned to Plaintiff. Therefore, the evidence does not support a reasonable inference that Fisher had "the time and ability to avoid the injury[.]" *Bass*, 132 N.C. App. at 33, 511 S.E.2d at 7-8. Based on the foregoing, we conclude the trial court did not err in denying Plaintiff's request for a jury instruction concerning the issue of last clear chance.

### ii: Willful and Wanton Negligence

[2] In Plaintiff's second argument on appeal, she contends the trial court erred by failing to instruct the jury concerning willful and wanton negligence so as to overcome the defense of contributory negligence. We disagree.

"[O]rdinary contributory negligence is not a defense to an action for willful and wanton negligence[.]" *Meachum v. Faw*, 112 N.C. App. 489, 494, 436 S.E.2d 141, 144 (1993). Our Supreme Court has defined willful negligence in the following manner: "An act is done wilfully when it is done purposely and deliberately in violation of law or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason." *Yancey v. Lea*, 354 N.C. 48, 52-53, 550 S.E.2d 155, 157-58 (2001) (citation and quotation marks omitted). "The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another[.]" *Id.* (citation and quotation marks omitted). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* at 52, 550 S.E.2d at 157 (citation and quotation marks omitted).

In this case, Plaintiff argues that "Fisher's active and independent acts of mopping behind Plaintiff . . . knowing that Plaintiff would probably slip and fall and suffer serious physical injuries" constituted "conscious and intentional disregard of and indifference to the rights and safety of others." Thus, Plaintiff contends, the trial court erred by not instructing the jury concerning willful and wanton negligence. We find this argument unconvincing because we do not believe the evidence supports a reasonable inference that Fisher, in mopping the

floor, acted with any purpose or deliberation not to discharge his duty to Plaintiff's safety. Moreover, we do not believe the evidence supports a reasonable inference that Fisher acted with a wicked purpose or manifested a reckless indifference to Plaintiff's safety. Fisher placed two wet-floor signs in the store before he began mopping. Based on the foregoing, we conclude the trial court did not err by not instructing the jury concerning willful and wanton negligence.

### B: Jury Request

**[3]** In Plaintiff's final argument, she contends it was prejudicial error for the trial court not to submit the surveillance video to the jury in the jury room during deliberations. We find this argument without merit.

In civil cases, "[i]t is well settled that trial exhibits introduced into evidence may not be present in the jury room during deliberations unless both parties consent." *Nunnery v. Baucom*, 135 N.C. App. 556, 559, 521 S.E.2d 479, 482 (1999) (citation omitted). "Further, the failure to make a timely objection to the taking of the exhibits to the jury room does not waive the error; specific consent is required of all parties[.]" *Id.* (citations and quotation marks omitted). "[A]n indication of an unwillingness to consent is sufficient to make it error to allow the exhibits into the jury room." *Dixon v. Taylor*, 111 N.C. App. 97, 109, 431 S.E.2d 778, 784 (1993).

In the case *sub judice*, near the end of the first day of jury deliberations, the foreperson requested that the surveillance video showing Plaintiff's slip and fall, which was admitted into evidence and published to the jury during the trial in this case, be shown to the jury, to which the court responded, "Okay. We'll do that first thing in the morning and then go from there."

The next morning, counsel for Defendants was not present in the courtroom at 9:30 A.M. The trial court sent the jury back to deliberate while counsel for Plaintiff and the court waited for the arrival of counsel for Defendant. The jury sent a second question to the trial court judge: "Can the courtroom be cleared while we view the video, so that we may discuss while viewing?" After counsel for Defendants arrived, the trial court and the attorneys attempted to come to an agreement on the method by which the jury would view the surveillance videos. The colloquy that transpired was lengthy. The trial court and the attorneys discussed a variety of issues, including, among other things, such questions as whether "the jury should come out

REDD v. WILCOHESS, LLC

[225 N.C. App. 726 (2013)]

and look at the video and then go back and deliberate," whether the jury should view the video in the jury room and deliberate while viewing it, or whether the courtroom could "serve as the jury room[.]" Before the attorneys could reach a consensus as to the method by which the jury would view the surveillance videos in this case, the jury informed the deputy that they no longer wanted to see the video and had reached a verdict. Counsel for Plaintiff and Defendants then approached the bench, after which the trial court said the following:

> THE COURT: Mr. Foreperson, before you hear the verdict read by the clerk, you had this morning sent out a request to see the video and examine it. Are you withdrawing that request? Is the jury –
>
> MR. FOREPERSON: Yes, sir. . . . On further deliberation, we didn't really need to see it.
>
> THE COURT: Do all the jurors agree to this?
>
> JURORS: Yes.
>
> THE COURT: Please indicate so by raising hands. Let the record reflect that all jurors raised their hand, indicating they agree with the statement of the foreperson that they were withdrawing their request to see the video. Madam Clerk, would you take the verdict, please?

We believe, in this particular case, the record reflects that the parties never reached the level of specific consent with respect to the questions of whether and how the jury would view the surveillance videotapes. At times throughout the attorneys' discussion, they appeared to approach agreement about the method by which the videotapes would be viewed by the jury. However, in every instance, either counsel for Plaintiff or counsel for Defendants, after a pause, would object and propose a different method. See Taylor, 111 N.C. App. at 109, 431 S.E.2d at 784 (stating that "[t]he attorney was not bound by his earlier objection and was within his rights to change his opinion on the question and the record reflects that he did"). The parties never reached full consensus, and during the time the parties discussed the various methods of viewing the surveillance videotapes, the jury reached a verdict without the videotapes. The trial court established that the verdict was not affected by the failure of the parties to reach specific agreement. The jury indicated that its request for the videotapes was withdrawn because, "[o]n further deliberation, . . . [it] didn't really need to see it." The issue here is whether the trial court committed

error by *not submitting* the videotapes to the jury when the attorneys failed to consent. We conclude this is not error. Rather, it would have been error for the trial court *to submit* the videotapes to the jury without the consent of the parties. *Baucom*, 135 N.C. App. at 559, 521 S.E.2d at 482 (stating that "trial exhibits introduced into evidence may not be present in the jury room during deliberations unless both parties consent"). Because the parties never specifically consented, we hold the trial court did not commit error by failing to permit the jury to view the surveillance videotapes.

NO ERROR.

Chief Judge MARTIN and Judge ERVIN concur.